In the Matter of the Claim of FRANK WALKER, Respondent, against GREAT LAKES MOTOR CORP., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, December 20, 1956.

*Paul D. Williams* for appellants.

*W. Bartlett Sumner* for claimant-respondent.

*Jacob K. Javits, Attorney-General* (*Gilbert M. Landy* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

BERGAN, J. The appellants so vigorously maintain that the compensation award in this case is without substantial support in the proof and that for this reason it must be reversed as a matter of law, that we think some discussion of the record is required.

The single point made in appellant's brief is that when the evidence is viewed in the light of the record as a whole " the decision of the Workmen's Compensation Board cannot be sustained if this Court concludes that others, including the Court, could not reasonably reach the same result ". We look at our powers somewhat more narrowly; and our duty is to see whether there is substantial evidence to support the award, not whether we, or some other administrative agency, or a jury, might reasonably reach the same result. These things are quite different.

We give our attention first to the evidence in support of the finding of the board that there was an accident. Claimant, then 19 years old, was employed as a lot and maintenance attendant in a used car lot. The board has found that " while pushing a car, he sustained accidental injuries in the nature of a lumbo-sacral sprain   *   *   *   with splinting of the lumbar curve and muscle spasm, with the probability of a herniated disc in the lower lumbar region."

Claimant testified that he was moving a car to park it on the lot; that it stalled; that the charger which usually was attached to start a stalled car was elsewhere in use; that he got out to push the car and that when he pushed it " that's when I felt the pain in my back and my leg." He further described this pain: " it made me fold up more or less   *   *   *   I had to bend over, I don't know why. Just a sharp pain."

There is a definite expression of medical opinion in the record that claimant was suffering from " chronic low-back strain, with probability of a herniated disc in lower lumbar region ", and that " the accident described by the patient is a competent producing cause of his present disability."

There are some factual discrepancies in claimant's testimony which appellants demonstrate in their brief and on the argument, and many differences between his testimony and that of other witnesses. Claimant first testified the accident occurred June 24, 1952, and at another hearing he testified it occurred July 23, 1952. He testified he saw Dr. Charles E. Rung " about a week after   *   *   *   August 1 " and " I thought it was a cold ", but that he told Dr. Rung " about this accident ". At another point he testified he saw Dr. Rung about a week or 10 days after this accident. Dr. Rung testified that his office records showed claimant's visit was September 5; and that he was out of town and not available either on July 5 or August 5; and he denied that claimant told him that he had an accident.

This physician testified, however, that he referred claimant to a hospital some three days to a week later, and the hospital

admission date has been shown to be August 28; so that it is reasonable to think that the visit to the physician was not in September, but as early as August 21.

Viewed this way, claimant's testimony as to the date of his visit to this physician could be found not substantially inaccurate. Appellants argue the point, however, that the physician's record showing claimant's visit to be September 5 is "documentary evidence", although it is not disputed that the physician thereafter referred claimant to the hospital which shows an admission of August 28.

Claimant testified that Carl Schnauffer, a fellow employee "was there the time it happened. He is the one that helped me". But Schnauffer denied any knowledge of claimant's "hurting himself or shoving anything". Another witness whom plaintiff testified he told of his injury, denied any such conversation.

Still another witness testified that claimant told him he had been suddenly stricken at night with pain while lying on a swing in his own yard; that he had been told at the hospital he had a slight case of polio and he was going back to the hospital "for further examination to see if it was or was not polio". There is some other testimony in this direction which tends to discredit claimant's narrative.

The employer, however, filed a first report of injury (C-2) with the board on September 22. In this report the employer described an accident on July 23, 1952, stated that "employee was pushing stalled automobile and while doing so pulled ligament in leg"; and that the foreman, Zelton Brumberg, first knew of the injury "about August 1, 1952".

The admission by an employer of the occurrence of an accident by filing an official C-2 form which the employer is required to file after a claim is made, and which, to be filled out at all requires categorical admission of an accident is often a thin reed of constructive admission which has little evidentiary depth.

But here we think the board was entitled to accord the C-2 an independent value of its own on the testimony offered by appellants relating to its preparation. Wilbur N. Kraus, who worked for the employer, was responsible for filling it out. The information, he said, came through two phone calls from claimant's mother. This included the statement that the foreman "first knew" of the accident "about August 1". The record generally discloses evidence of the mother's frequent activity and intervention with doctors, the hospital and others concerned with the case.

Mr. Kraus testified that after Mrs. Walker told him that the claimant " notified Mr. Brumberg [the foreman] on that date " he immediately called Brumberg " and asked if he knew anything " about an accident; and that Brumberg denied any such knowledge.

Kraus said Brumberg told him: " I can't remember anything about an injury " and added that Brumberg " seemed quite surprised that there was any injury there ". In these circumstances and armed with this knowledge it would be reasonable to expect the employer to say in the C-2 that the foreman did not know of the occurrence of the accident; and to rely on what the foreman said about his own knowledge rather than on what claimant's mother said about the foreman's knowledge.

Since the employer knew of the foreman's purported disavowal of knowledge of the accident before the C-2 was filled out and signed we would assume that it could readily be found that the answer to " when did your foreman first know of injury: About August 1, 1952 " was a statement by the employer sufficiently conscious and advised to have value as an admission. As to occurrence of the accident, we are of opinion that under the limitations of our power to review facts, the board's findings should be sustained.

On the medical issue appellants' brief contains the significant statement that " Relatively little medical testimony was taken on the question of disability flowing from the alleged accident, for the reason that early in the development of the record, the diagnosis of poliomyelitis was made by the first attending physician, and the case was continued for further medical evidence to attempt to establish whether or not the distress seen by the doctors was due to poliomyelitis or was not due to that disease. Such further medical investigation was never made, for reasons not readily apparent, either to the Referee or to Counsel ".

There was, however, no definite diagnosis of poliomyelitis made by the first attending physician who said " my impression was that there was a polio muscle shortening causing spasm * * * and I assumed * * * that the boy had a rather acute polio * * * previous to my examination ". This physician said he referred claimant to a neurologist and testified that he had no later confirmation of his first impression.

Claimant went to a hospital clinic August 28, where he was seen and treated by a neurologist. This hospital record was delivered to the carrier and lost while in carrier's possession, and hence was not available to the referee; but the neurologist stated his diagnosis was " a lumbar-sacral strain "; and because

" there is a question of unrecognized polio in the spine in my mind ", he felt it should be looked into by a neurosurgeon.

After these two physicians testified the referee expressed the opinion that " it would appear to me very important to determine whether or not this claimant ever had a contact with polio ".

On October 16, 1953 carrier's counsel stated as to further medical examination " I would go along on the designation of an impartial specialist on the question of diagnosis ". There were protracted further attempts at medical examination. On March 19, 1954 a neurologist reported a diagnostic impression the claimant was suffering from " a herniated intervertebral disc ". A myelogram was suggested; but one neurologist said he " would hesitate to make this test in view of all the factors involved but it perhaps should be done to help resolve the problem ". Claimant and his mother resisted such a test and it was not done.

On October 11, 1954 the impartial specialist reported a conclusion that claimant had a " chronic low-back strain with probability of a herniated disc in lower lumbar region. The accident described by the patient is a competent producing cause of his present disability ".

We are of opinion that the statement by appellants in their brief that " further medical investigation was never made " to determine whether the condition described was poliomyelitis does not aptly describe the extensive medical studies and reports disclosed in this protracted proceeding. Every test except a myelogram seems to have been done and the utility of the myelogram was to establish the presence or absence of a herniated disc.

The award should be affirmed, with costs to the Workmen's Compensation Board.

FOSTER, P. J., COON and GIBSON, JJ., concur.

Award affirmed, with costs to the Workmen's Compensation Board.